UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# MEMORANDUM

| | | | |
|---|---|---|---|
| Case No. | CV 17-2763 DSF (FFMx) | Date | 6/28/17 |
| Title | Stephen Wilson, et al. v. Odwalla, Inc., et al. | | |

DALE S. FISCHER, United States District Judge

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff | Attorneys Present for Defendants |
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order DENYING Defendants Motion to Dismiss First Amended Complaint (Dkt. 22)

Defendants Odwalla, Inc. and The Coca-Cola Company move to dismiss Plaintiff Stephen Wilson's First Amended Complaint for failure to state a claim. The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. For the following reasons, the Court DENIES the motion.

## I. BACKGROUND

Wilson brings his class action complaint on behalf of all persons who purchased Defendants' Odwalla 100% juice products that include the claim "No Added Sugar" on their label or packaging. First Am. Compl. (FAC) ¶ 1. He alleges this practice violates 21 C.F.R. § 101.60(c)(2)(iv), under which a "no added sugar" claim is precluded unless "[t]he food that [the product] resembles and for which it substitutes normally contains added sugars," because Odwalla 100% juices do not resemble and substitute for foods that normally contain added sugars. Id. ¶¶ 6, 8. Wilson bought Odwalla 100% Orange Juice. Id. ¶ 7. Before his purchase, Wilson saw and relied on the "No Added Sugar" claim in making the purchase, believing that other similar products contained added sugar. Id. ¶¶ 10, 12-14. He pleads that if the juice had no such claim, he would have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

paid less for the juice or not purchased it all.  Id. ¶ 16.  He brings claims for violations of California's Unfair Competition Law (UCL), False Advertising Law (FAL), and Consumer Legal Remedies Act (CLRA).

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for failure to state a claim upon which relief can be granted.  "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  Erickson v. Pardus, 551 U.S. 89, 94 (2007).  A court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  Id. (alteration in original; citation and internal quotation marks omitted).  A complaint must "state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This means that the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679.

Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong.  Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.  A party alleging fraud must set forth more than the neutral facts necessary to identify the transaction.  Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (alterations, citations, and internal quotation marks omitted).  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

## III.     DISCUSSION

A.     <u>Preemption</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

Defendants argue Wilson's claims are preempted by the Food, Drug and Cosmetic Act because the "No Sugar Added" labeling complies with applicable Food and Drug Administration (FDA) regulations. The relevant FDA labeling regulation provides that the term "no sugar added" may be used only if "[t]he food that it resembles and for which it substitutes normally contains added sugars." 21 C.F.R. § 101.60(c)(2)(iv). The parties agree that this means that the food the Odwalla product resembles and for which it substitutes must normally contain added sugars. Mot. at 1; Opp.[1] at 2-3.

Defendants seem to agree with Wilson's plain meaning definition of "resembles" as "to be like or similar to," and the 21 C.F.R. § 101.13(d) definition that "[a] 'substitute' food is one that may be used interchangeably with another food that it resembles, i.e., that it is organoleptically, physically, and functionally (including shelf life) similar to, and that it is not nutritionally inferior to unless it is labeled as an 'imitation.'" Opp. at 2; Reply at 5-6. The disagreement stems from how broadly or narrowly each side defines the category of food that Odwalla's product "resembles and for which it substitutes." Defendants contend Wilson essentially reads the provision to require that the food is identical to the product in question. Reply at 6. But Wilson alleges only that "[t]he food that Odwalla 100% Orange Juice resembles and substitutes for is pasteurized pure squeezed 100% orange juice[;] . . . [t]he food that Odwalla Groovin' Greens resembles and substitutes for is a 100% juice blend of apple, cucumber, kale, spinach and 3 other juices/purees from concentrate[;] [and] . . . [t]he food that Odwalla Berry Greens resembles and substitutes for is a 100% juice blend of apple, cucumber, kale, spinach, blueberry and strawberry juices/purees from concentrate." FAC ¶¶ 49, 52, 55. Defendants argue the correct category of food its juices resemble and substitute for includes "noncarbonated drinks containing any amount of fruit juice," and submit an FDA inspection guide in support.[2] Mot. at 13; Req. Judicial Notice ISO Mot. (RJN), Ex. G. But the Court finds this guide, which describes general product categories and their corresponding products, is insufficient to establish that the "FDA views comparison juice products broadly," Reply at 4, for the purposes of the regulation at issue. Even if Wilson's definition is too narrow, Defendants have not convinced the Court that their definition is correct and mandates dismissal.

---

[1] Wilson filed a notice of errata attaching a corrected opposition. Dkt. 27. The Court's references to Wilson's opposition will be to this document.
[2] The inspection guide includes the product category "[j]uices, nectars, fruit drinks," with the corresponding products "[a]ll fruit juices (excluding lemon and lime juice), nectars, noncarbonated drinks containing any amount of fruit juice or nectar." RJN, Ex. G at 13.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

Even assuming the Court were to adopt Defendants' position, Defendants have failed to establish that the relevant category of food "normally contains added sugars." Defendants ask that the Court judicially notice screenshots from websites depicting various fruit drinks with added sugars. RJN, Ex. F. Although the Court questions whether these are judicially noticeable, Wilson does not object. Nevertheless, these screenshots fail to demonstrate that the product category as a whole - as defined by Defendants - *normally* contains added sugars. The Court rejects Defendants' preemption argument at this early stage of the litigation.

**B.**     **Failure to State a Claim**

Defendants contend Wilson fails to state a claim under Rule 9(b), arguing that the "No Added Sugar" claim is truthful because their juices do not actually include added sugar. But Wilson's theory of liability is that Defendants' labeling is misleading because Defendants include "No Added Sugar" claims - in violation of FDA regulations - and their competitors do not. But – recognizing that plaintiff's "theory of deception [was] unusual," the Ninth Circuit recently held (in an unpublished case) that a plaintiff may state a claim for UCL, FAL, and CLRA violations when a defendant's label contains literally true assertions that FDA regulations prevent its competitors from making for similar products. Bruton v. Gerber Prod. Co., No. 15-15174, 2017 WL 1396221, at *1-2 (9th Cir. 2017). Defendants argue that they do not violate FDA regulations; but as discussed above, Defendants fail to establish that their labeling complies with FDA regulations.[3]

Defendants also argue Wilson lacks statutory standing to seek injunctive relief.[4] To evaluate this contention, the Court looks to Proposition 64. Before Proposition 64 was enacted, a plaintiff could bring a UCL action on behalf of the general public without showing he was injured or damaged. In re Tobacco II Cases, 46 Cal. 4th 298, 314 (2009). This broad standing requirement resulted in frivolous litigation "to extort money from small businesses" and prompted the passage of Proposition 64, which "did not propose to curb the broad remedial purpose of the UCL . . . but targeted only th[is] specific abuse." Id. at 316-17. The California Supreme Court made clear that

---

[3] Defendants also argue that their labels are not misleading because consumers can simply look at the nutrition labels on the juice bottles and see that their juice is not low in calories or low in sugar. Though this may be true, the nutritional labels would not clarify whether the food that the juice resembles and substitutes for normally contains added sugars.

[4] Defendants do not challenge Article III standing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

Proposition 64 consisted of "procedural changes with respect to standing to bring a UCL action" and "left entirely unchanged the substantive rules governing business and competitive conduct." Id. at 313-14.  Accordingly, a business's liability under the UCL would be the same whether analyzed before or after the enactment of Proposition 64.  Id. at 314.

Proposition 64 also amended section 17203 to read:  "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. . . .  Any person may pursue representative claims or relief on behalf of others only if [he] meets the standing requirements of Section 17204."  Amended section 17204 confers standing on "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Id. at 306.  The California Supreme Court emphasized:  "Specifically, Proposition 64 did not amend the remedies provision of section 17203.  This is significant because under section 17203, the primary form of relief available under the UCL to protect consumers from unfair business practices is an injunction, along with ancillary relief in the form of restitution." Id. at 319.

Defendants do not contend Wilson has failed to plead that he "suffered injury in fact and has lost money or property as a result of the unfair competition."  Instead, they argue he has not alleged "likelihood of future harm": he cannot be misled in the future because he now understands the "No Sugar Added" label, and therefore knows (or at least contends) that products that resemble or substitute for the products at issue also do not have added sugar.  But Defendants' focus on Wilson's present knowledge is not the issue under the UCL.  "The purpose of [injunctive relief under the UCL] . . . is to protect California's consumers against unfair business practices by stopping such practices in their tracks." Id.  If plaintiffs in false advertising actions are precluded from seeking injunctive relief because by bringing suit they admit knowledge of the alleged falsity, unlawful practices such as those alleged here could never be enjoined, and the purpose of the statute would not be served.

Colgan v. Leatherman Tool Group, Inc., 135 Cal. App. 4th 663, 702 (2006) addressed a similar situation.  There, plaintiff's class action for violations of the UCL, FAL, and CLRA asserted that defendant labeled its products "Made in U.S.A." when parts of the products were manufactured outside of the United States.  The trial court entered summary judgment and granted mandatory and prohibitory injunctive relief under all three statutes.  The court of appeal affirmed, noting: "Injunctive relief is one of the principal remedies available for violations of §§ 17200 and 17500." Id. at 701.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

Wilson seeks to represent a class of persons who will be harmed if Defendants are not enjoined. Further, it is obvious that Defendants will continue labeling their products in the same way absent an injunction - because they do not believe their labeling is improper. The Court finds Wilson has statutory standing to seek injunctive relief.[5] Defendants' motion to dismiss is denied.

**C.    Stay**

Defendants alternatively request that the Court grant a stay pending the Ninth Circuit's resolution of Mohammed Rahman v. Mott's LLP, No. 15-15579, a similar case involving the legality of "No Added Sugar" claims on juice labels. Mot. at 23; RJN, Exs. A-C. "A district court has discretionary power to stay proceedings in its own court under Landis v. North American Co." Lockyer v. Mirant Corp., 398 F.3d 1098, 1109 (9th Cir. 2005) (citing Landis v. North American Co., 299 U.S. 248, 254 (1936)). However, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." Landis, 299 U.S. at 255.

In determining whether to grant a stay pursuant to Landis, courts in the Ninth Circuit weigh the "competing interests which will be affected by the granting or refusal to grant a stay," including "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." Lockyer, 398 F.3d at 1110 (quoting CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962)).

Wilson argues he will be harmed if the Court grants Defendants' stay because he will be delayed in obtaining injunctive relief. Opp. at 25. Assuming Wilson's claims have merit, consumers will continue to be harmed by Defendants' deceptive labeling. "[I]f there is even a fair possibility that the stay for which [the movant] prays will work damage to some one else," the movant "must make out a clear case of hardship or inequity in being required to go forward." See Landis, 299 U.S. at 255. But Defendants merely contend that the hardship they would face is increased litigation costs - and

---

[5] A plaintiff who establishes UCL also establishes FAL and CLRA standing. See, e.g., Hinojos v. Kohl's Corp., 718 F.3d 1098, 1108 (9th Cir. 2013).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### MEMORANDUM

having to brief class certification without the Ninth Circuit's guidance. Mot. at 24. The Ninth Circuit has instructed that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of Landis." See Lockyer, 398 F.3d at 1112.

Further, "[a] stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." Leyva v. Certified Grocers of California, Ltd., 593 F.2d, 857, 864 (9th Cir. 1979). "Generally, stays should not be indefinite in nature." Dependable Highway Exp., Inc. v. Navigators Ins. Co., 498 F.3d 1059, 1066 (9th Cir. 2007). The Ninth Circuit has stated that even a stay that terminates "upon the 'resolution of [an] appeal'" has an indefinite term because the Supreme Court could grant certiorari to review the appellate court's decision, or the appellate court could remand to the district court for further proceedings. Yong v. I.N.S., 208 F.3d 1116, 1119 (9th Cir. 2000). Because Defendants (1) fail to show a "clear case of hardship or inequity" and (2) seek a stay of indefinite length, the Court denies Defendants' motion.[6]

### IV. CONCLUSION

Defendants' motion to dismiss for failure to state a claim is DENIED.

IT IS SO ORDERED.

---

[6] Defendants argue that the Ninth Circuit decision will simplify the issues for the present action. Mot. at 24. In the pending appeal, the Ninth Circuit will decide whether the district court erred in denying certification for a Rule 23(c)(4) liability-only class and in finding the plaintiff lacked Article III standing for injunctive relief for his UCL, FAL, and CLRA claims. See RJN, Exs. A-C. Nonetheless, "although considerations of judicial economy are appropriate, they cannot justify the indefinite, and potentially lengthy, stay imposed here." Yong, 208 F.3d at 1120-21.